# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

PATRICIA A. SHENK, *et al.*,

                Plaintiffs,

    vs.

MALLINCKRODT PLC,
MARK TRUDEAU,
MATTHEW K. HARBAUGH, and
HUGH O'NEILL,

                Defendants.

No. 1:17-cv-00145-DLF

**ORAL ARGUMENT REQUESTED**

## INDIVIDUAL DEFENDANTS' MOTION TO DISMISS THE
## CONSOLIDATED CLASS ACTION COMPLAINT

For the reasons stated in their attached Memorandum of Law, and in the

Memorandum of Law filed today by defendant Mallinckrodt plc (the "Company") in Support of

its Motion to Dismiss, and upon the attached Declaration of Charles E. Davidow in Support of

the Individual Defendants' Motion to Dismiss the Consolidated Class Action Complaint, dated

July 17, 2018, and the exhibit attached thereto, defendants Mark Trudeau, Matthew K.

Harbaugh, and Hugh O'Neill ("the Individual Defendants"), by their attorneys, hereby move

pursuant to Rule 12(b) of the Federal Rules of Civil Procedure to dismiss the Consolidated Class

Action Complaint filed in this action by lead plaintiff State Teachers Retirement System of Ohio

on May 18, 2018 (ECF No. 51).  Pursuant to LCvR 7(f), the Individual Defendants request oral

argument on this motion.

WHEREFORE, the Individual Defendants respectfully request that this Court grant this motion, and dismiss the claims against the Individual Defendants in the Consolidated Class Action Complaint with prejudice.

Dated: Washington, D.C.
July 17, 2018

PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP

By: /s/ *Charles E. Davidow*
Charles E. Davidow
(D.C. Bar No. 331702)
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7380
Fax: (202) 204-7380
cdavidow@paulweiss.com

Daniel J. Kramer (*pro hac vice*)
David W. Brown (*pro hac vice*)
William A. Clareman (*pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019-6064
Phone: (212) 373-3000
Fax: (212) 757-3990
dkramer@paulweiss.com
dbrown@paulweiss.com
wclareman@paulweiss.com

*Attorneys for Mark Trudeau, Matthew K. Harbaugh, and Hugh O'Neill*

# CERTIFICATE OF SERVICE

Pursuant to LCvR 5.3, I hereby certify that, on July 17, 2018, I caused to be electronically filed a copy of the foregoing **Individual Defendants' Motion to Dismiss the Consolidated Class Action Complaint** using the Court's CM/ECF system, which will send notification of such filing to all attorneys of record.

/s/ *Charles E. Davidow*
Charles E. Davidow
(D.C. Bar No. 331702)
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7380
Fax: (202) 204-7380
cdavidow@paulweiss.com

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

PATRICIA A. SHENK, *et al.*,

                 Plaintiffs,

    vs.

MALLINCKRODT PLC,
MARK TRUDEAU,
MATTHEW K. HARBAUGH, and
HUGH O'NEILL,

                 Defendants.

No. 1:17-cv-00145-DLF

## INDIVIDUAL DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS THE
## CONSOLIDATED CLASS ACTION COMPLAINT

PAUL, WEISS, RIFKIND,
    WHARTON & GARRISON LLP
2001 K Street, NW
Washington, D.C. 20006
Phone: (202) 223-7300
Fax: (202) 223-7420

1285 Avenue of the Americas
New York, NY 10019
Phone: (212) 373-3000
Fax: (212) 757-3990

*Attorneys for Mark Trudeau, Matthew K.
Harbaugh, and Hugh O'Neill*

Dated: July 17, 2018

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ...................................................................................................................... 2

I.     THE INDIVIDUAL DEFENDANTS JOIN THE MOTION TO DISMISS
SUBMITTED BY THE COMPANY ......................................................................... 2

II.    THE COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 10(B)
AND RULE 10B-5 AGAINST THE INDIVIDUAL DEFENDANTS ............................. 3

     A.    The Complaint Fails to State a Claim Under Section 10(b) and Rule 10b-5
Against Mr. Trudeau ....................................................................................... 4

          1.    Mr. Trudeau's Inexact Estimate of Acthar's Exposure to Medicare
Reimbursement Was Directionally Correct, and Not False or
Misleading ........................................................................................ 4

          2.    Mr. Trudeau's Opinion Statements Are Not Actionable ........................... 8

     B.    The Complaint Fails to State a Claim Under Section 10(b) and Rule 10b-5
Against Mr. Harbaugh ..................................................................................... 9

     C.    The Complaint Fails to State a Claim Under Section 10(b) and Rule 10b-5
Against Mr. O'Neill ....................................................................................... 10

          1.    Plaintiff Fails to Plead That Either of the Two Oral Statements by
Mr. O'Neill Are Actionable ................................................................ 10

          2.    Mr. O'Neill Did Not "Make" Any of the Company's Statements
Identified in the Complaint and Is Therefore Not Liable for Them
Under *Janus* ..................................................................................... 13

     D.    The Complaint Fails to Plead Scienter on the Part of the Individual
Defendants, or Loss Causation ........................................................................ 13

III.    THE COMPLAINT FAILS TO STATE A CLAIM AGAINST THE
INDIVIDUAL DEFENDANTS FOR SECONDARY LIABILITY UNDER
SECTION 20(A) ................................................................................................... 15

CONCLUSION ................................................................................................................. 18

**Page(s)**

**CASES**

*In re Anadigics, Inc., Sec. Litig.*,
No. Civ. A. 08–5572 (MLC), 2011 WL 4594845 (D.N.J. Sept. 30, 2011),
*aff'd*, 484 F. App'x 742 (3d Cir. 2012) .................................................................................11

*Ashland, Inc.* v. *Oppenheimer & Co.*,
648 F.3d 461 (6th Cir. 2011) .............................................................................................5

*City of Monroe Emps. Ret. Sys.* v. *Bridgestone Corp.*,
399 F.3d 651 (6th Cir. 2005) .............................................................................................5

*Dura Pharm., Inc.* v. *Broudo*,
544 U.S. 336 (2005) ......................................................................................................3, 10

*In re Eaton Corp. Sec. Litig.*,
No. 16-CV-5894 (JGK), 2017 WL 4217146 (S.D.N.Y. Sept. 20, 2017) ......................12

*In re Fannie Mae Sec., Derivative, & "ERISA" Litig.*,
503 F. Supp. 2d 25 (D.D.C. 2007) .......................................................................14, 17, 18

*Foley* v. *Transocean*,
861 F. Supp. 2d 197 (S.D.N.Y. 2012) ...............................................................................7

*Freeland* v. *Iridium World Commc'ns, Ltd.*,
545 F. Supp. 2d 59 (D.D.C. 2008) ..................................................................................17

*In re Harman Int'l Indus., Inc. Sec. Litig.*,
791 F.3d 90 (D.C. Cir. 2015) .....................................................................................15, 17

*IDT Corp.* v. *eGlobe Inc.*,
140 F. Supp. 2d 30 (D.D.C. 2001) ...................................................................................16

*In re Int'l Bus. Machines Corporate Sec. Litig.*,
163 F.3d 102 (2d Cir. 1998) .............................................................................................10

*Janus Capital Group, Inc.* v. *First Derivative Traders*,
564 U.S. 135 (2011) .......................................................................................................2, 13

*In re K-tel Int'l, Inc. Sec. Litig.*,
300 F.3d 881 (8th Cir. 2002) ............................................................................................12

*Krasner* v. *Rahfco Funds LP*,
No. 11 CV 4092 VB, 2012 WL 4069294 (S.D.N.Y. Aug. 9, 2012) ................................16

*Omnicare, Inc.* v. *Laborers Dist. Council Const. Indus. Pension Fund*,
135 S. Ct. 1318 (2015) ....................................................................................5, 8, 9

*Plumbers & Pipefitters Local Union 719 Pension Fund* v. *Zimmer Holdings, Inc.*,
679 F.3d 952 (7th Cir. 2012) ....................................................................................6

*Plumbers Local No. 200 Pension Fund* v. *Wash. Post Co.*,
831 F. Supp. 2d 291 (D.D.C. 2011) .......................................................................14

*Raab* v. *Gen. Physics Corp.*,
4 F.3d 286 (4th Cir. 1993) .........................................................................................4

*Ross* v. *Walton*,
668 F. Supp. 2d 32 (D.D.C. 2009) ......................................................................7, 14

*Scritchfield* v. *Paolo*,
274 F. Supp. 2d 166 (D.R.I. 2003) ..........................................................................10

*In re Smith Barney Transfer Agent Litig.*,
884 F. Supp. 2d 152 (S.D.N.Y. 2012) .....................................................................13

*Stevens* v. *InPhonic, Inc.*,
662 F. Supp. 2d 105 (D.D.C. 2009) .........................................................................14

*Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ..............................................................................................3, 9

*Tongue* v. *Sanofi*,
816 F.3d 199 (2d Cir. 2016) .......................................................................................9

*Washtenaw Cty. Emps.' Ret. Sys.* v. *Walgreen Co.*,
No. 15-cv-3187, 2016 WL 5720375 (N.D. Ill. Sept. 30, 2016) ..............................16

*Wang* v. *Bear Stearns Co.*,
14 F. Supp. 3d 537 (S.D.N.Y. 2014) ........................................................................12

*In re XM Satellite Radio Holdings Sec. Litig.*,
479 F. Supp. 2d 165 (D.D.C. 2007) ...........................................................................5

**STATUTES**

15 U.S.C. § 78j ................................................................................................. passim

15 U.S.C. § 78t ................................................................................................. passim

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

15 U.S.C. § 78u–4................................................................................................2, 3, 14, 17

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6)..................................................................................................1

Fed. R. Civ. P. 9(b)........................................................................................................3

17 C.F.R. § 230.405......................................................................................................18

17 C.F.R. § 240.10b-5........................................................................................... passim

Defendants Mark Trudeau, Matthew K. Harbaugh, and Hugh O'Neill (the "Individual Defendants") submit this memorandum of law in support of their motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Consolidated Class Action Complaint filed in this matter on May 18, 2018 at Dkt. No. 51 (the "Complaint") by lead plaintiff State Teachers Retirement System of Ohio ("Plaintiff").

## PRELIMINARY STATEMENT

Plaintiff's claims against the Individual Defendants based on the allegedly false and misleading statements and omissions described in the Complaint all fail for the reasons presented in the memorandum of law filed today by defendant Mallinckrodt plc (the "Company") in support of its motion to dismiss the Complaint. The Individual Defendants join that motion in its entirety, and write separately here for four reasons.

*First*, this memorandum expands on the arguments in the Company's brief with respect to Mr. Trudeau's directionally accurate, but uncertain and indefinite, off-the-cuff estimate of Acthar's exposure to Medicare reimbursement, provided in response to an analyst's question on an October 2015 conference call. This brief also explains that two other oral statements by Mr. Trudeau, concerning competition for Acthar and progress with formularies, are not actionable because Mr. Trudeau clearly expressed them as his opinions, and Plaintiff has not adequately pleaded Mr. Trudeau believed them to be false or omitted material facts necessary to render the opinions not misleading at the time they were made.

*Second*, this memorandum addresses two oral statements by Mr. Harbaugh and two oral statements by Mr. O'Neill that are identified in the Complaint, but not alleged to be false or misleading. To the contrary, Plaintiff affirmatively contends that those oral statements were *true*. In addition, none of those statements are material as a matter of law and Plaintiff identifies no losses allegedly caused by them. Thus, they cannot form any basis for liability

under Section 10(b) and Rule 10b-5. Further, under *Janus Capital Group, Inc.* v. *First Derivative Traders*, 564 U.S. 135 (2011), all claims against Mr. O'Neill must be dismissed because he is not the "maker" of any allegedly false or misleading statements identified in the Complaint.

*Third*, for the reasons provided in the Company's brief, Plaintiff has entirely failed to carry its burden to adequately plead facts giving rise to a "strong inference" of scienter with respect to any of the Individual Defendants as required under the PSLRA. The Complaint pleads no facts establishing that any Individual Defendant knew that any alleged misstatements were false when made, or demonstrating extreme recklessness, and makes no attempt of any kind to plead that any Individual Defendant had both motive and opportunity to commit fraud. Instead, the Complaint relies exclusively on generalized and conclusory allegations that the Individual Defendants must have known contrary facts by virtue of their senior positions in the Company. This is inadequate as a matter of law. Nor does Plaintiff adequately plead loss causation in the form of stock price declines for several of the alleged misstatements and omissions, as detailed in the Company's brief.

*Fourth*, this memorandum shows that claims under Section 20(a) against all of the Individual Defendants are unavailing. Plaintiff does not adequately plead a primary violation, nor does Plaintiff adequately plead control and participation. These shortcomings are fatal to Plaintiff's Section 20(a) claims, and they should accordingly be dismissed.

## ARGUMENT

## I.   THE INDIVIDUAL DEFENDANTS JOIN THE MOTION TO DISMISS SUBMITTED BY THE COMPANY

The Individual Defendants join the Company's motion to dismiss and incorporate by reference the arguments in the Company's brief with respect to each of the alleged

misstatements or omissions that Plaintiff alleges any of the Individual Defendants is liable for—including the Individual Defendants' oral statements, as well as statements in the Company's SEC filings, press releases, or other written documents that any of the Individual Defendants made, signed, or authorized. Plaintiff's claims concerning (i) Acthar's competitive position, (ii) the FTC investigation, (iii) Acthar's exposure to government programs, (iv) payer formularies, (v) growth projections, (vi) Acthar's efficacy, (vii) the proportion of Acthar's business attributable to neurology, (viii) a European Synacthen manufacturer's production plans, and (ix) Acthar's share of the Company's business, should all be dismissed for all of the reasons set forth in the Company's memorandum of law.

## II. THE COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 10(B) AND RULE 10B-5 AGAINST THE INDIVIDUAL DEFENDANTS

To state a claim under Section 10(b) and Rule 10b-5, a plaintiff must establish that defendants (1) in connection with the purchase or sale of a security, (2) made a misstatement or omission of fact, (3) which was material, (4) acting with scienter, (5) that the plaintiff relied upon, and (6) that caused him injury. *See Dura Pharm., Inc.* v. *Broudo*, 544 U.S. 336, 341 (2005). Under the "[e]xacting pleading requirements" imposed by the PSLRA and Rule 9(b), a plaintiff must "state with particularity both the facts constituting the alleged violation," including the "reasons why [each] statement is misleading," as well as "facts giving rise to a strong inference" of scienter. *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313–14, 321 (2007) (quoting 15 U.S.C. § 78u–4(b)).

**A.** **The Complaint Fails to State a Claim Under Section 10(b) and Rule 10b-5 Against Mr. Trudeau**

1. Mr. Trudeau's Inexact Estimate of Acthar's Exposure to Medicare Reimbursement Was Directionally Correct, and Not False or Misleading

We join all of the Company's arguments demonstrating why Mr. Trudeau's facially inexact, off-the-cuff estimate of Acthar's exposure to reimbursement by Medicare would not have been misleading to a reasonable investor. We elaborate on those arguments below.

During a conference call on October 6, 2015, an analyst asked, "[W]hat is your Acthar exposure to Medicare?" Mr. Trudeau responded that it was "maybe a little higher than" the company's overall "proportion of [its] business that goes through Medicare and Medicaid combined" of "about a quarter . . . roughly." (Compl. ¶ 128.)

Plaintiff fundamentally misconstrues Mr. Trudeau's statement by repeatedly suggesting that he pegged the Company's overall exposure to Medicare and Medicaid reimbursement at exactly "25%." (*See id.* ¶¶ 29, 129, 137, 144–45, 149, 151, 177, 182, 205, 212.) In reality, Mr. Trudeau's answer was not nearly as precise as Plaintiff makes it out to be. Mr. Trudeau loosely estimated the Company's overall exposure to Medicare and Medicaid combined for *all* drugs to be "*about* a quarter . . . *roughly*." (*Id.* ¶ 128 (emphasis added).) Next, turning back to Acthar, Mr. Trudeau described exposure to reimbursement by *Medicare* (not Medicare and Medicaid combined)[1] for Acthar, again using inexact and uncertain language:

---

[1] As explained in the Company's brief, Mr. Trudeau's full statement (including the 245 words Plaintiff never mentions) answered a question about Medicare only, focused on Medicare repeatedly, and referenced Medicaid briefly only in the context of providing a rough benchmark for comparison purposes. (*See* Def. Mallinckrodt's Mem. Supp. Mot. Dismiss § I.C, July 17, 2018 ("Mallinckrodt Mem.").) At the very least, it is ambiguous whether the response conveyed an estimate of Acthar reimbursement by Medicare only, or by both programs combined. This ambiguity is another reason why the statement is too indefinite to be false or misleading. *See Raab* v. *Gen. Physics Corp.*, 4 F.3d 286, 290 (4th Cir. 1993)

"*maybe* a *little* higher." (*Id.* emphasis added.) Mr. Trudeau's statement was directionally accurate—he correctly conveyed to investors that Acthar's exposure to Medicare alone was "higher" than the *combined* Medicare and Medicaid exposure for the Company as a whole.

The gravamen of Plaintiff's fraud claim is that the phrase "maybe a little" before the word "higher" rendered Mr. Trudeau's estimate materially misleading. But context matters. Reasonable investors would understand that a loose and non-specific estimate of "a little higher"—made off the cuff in response to an unscripted analyst question and hedged with the caveats "maybe," "about," and "roughly"—was not meant to convey an exact number.

As explained in the Company's brief, courts, in assessing what a reasonable investor would believe is material, consider the full "context" in which a statement is made including the "surrounding text," as well as any "hedges" or "disclaimers," and attach less weight to "off-the-cuff judgments," like Mr. Trudeau's, than to "formal documents." *Omnicare, Inc.* v. *Laborers Dist. Council Const. Indus. Pension Fund*, 135 S. Ct. 1318, 1330 (2015). Another factor courts consider when assessing materiality is whether the statements are "vague," "soft," and "squishy" as opposed to something more readily capable of "objective verification." *See, e.g.*, *Ashland, Inc.* v. *Oppenheimer & Co.*, 648 F.3d 461, 468 (6th Cir. 2011) ("soft" descriptions that escape "objective verification" were "too vague to qualify as material") (quoting *In re Ford Motor Co. Sec. Litig.*, 381 F.3d 563, 570 (6th Cir. 2004)); *City of Monroe Emps. Ret. Sys.* v. *Bridgestone Corp.*, 399 F.3d 651, 671 (6th Cir. 2005) (statements were "too squishy" to "communicate anything that a reasonable person would deem important to a securities investment decision"); *In re XM Satellite Radio Holdings Sec. Litig.*, 479 F. Supp. 2d

_____

(holding ambiguous terms "administrative" and "temporary" were too "amorphous" and "indeterminate" to be material misstatements).

165, 179–80 (D.D.C. 2007) ("vague" statements were "not the type of statement upon which a reasonable investor would rely"). Mr. Trudeau's qualified, rough approximation of "maybe a little" falls within the ambit of the types of statements that courts have repeatedly held are too generalized and inexact to be actionable as fraudulent, because a reasonable investor would not have relied on it to provide definitive, quantifiable information.

The Seventh Circuit's decision in *Plumbers & Pipefitters Local Union 719 Pension Fund* v. *Zimmer Holdings, Inc.*, 679 F.3d 952 (7th Cir. 2012), is particularly illustrative. There, the Seventh Circuit explained that "[o]ral exchanges are less precise than written ones" because they are "off the cuff," and held that an ambiguous oral answer was therefore not fraudulent. *Id.* at 956. In that case, the plaintiffs complained that a CEO misleadingly omitted information about FDA "Form 483" letters from his answer to a question on an analyst call—a question which directly asked whether the company had received "483[s]" or "warning letters"— by stating only that no FDA "warning letters" had been received in his answer. *Id.* at 955. The company had received 483 letters, but that was not disclosed by the CEO in the oral response. *Id.* at 955–56. The court observed that, like here, the "questioner could have followed up" for a more precise answer, "but didn't." *Id.* at 956. Thus, the court concluded the CEO's answer may have been ambiguous or at worst "evasive," but that "is short of fraudulent." *Id.*

Plaintiff's claim here is defective for fundamentally the same reasons. Mr. Trudeau's response to an unscripted question may have been imprecise and ambiguous, but that ambiguity and lack of clarity was obvious to investors on the face of the statement, and it was not materially misleading.

Of equal importance, Plaintiff has not alleged any information known to Mr. Trudeau at the time of his statement that conflicts with his answer. As explained in the

Company's brief, Mr. O'Neill's and Mr. Lannum's subsequent descriptions of Medicare reimbursement rates in the low-30s to mid-40s for Acthar are entirely consistent with any plausible construction of the generalized estimate of "maybe a little higher" than "roughly" "about a quarter" that Mr. Trudeau provided a year earlier. (*See* Mallinckrodt Mem. § I.C.) No reasonable investor could interpret Mr. Trudeau's statement that the exposure was "maybe a little higher" than "about a quarter" "roughly" as being at material variance from a range in the low-30s to mid-40s.

Nor can Plaintiff rely on the analysis manufactured a year after the fact on November 16, 2016 by Citron Research ("Citron")—an online newsletter operated by a notorious short-seller with a clear profit motive to drive down the Company's stock price—to establish that Mr. Trudeau's estimate was allegedly false at the time he uttered it a year earlier. As explained in the Company's brief, the Citron report was not an accurate representation of the Company's internal numbers at the time of Mr. Trudeau's statement, but rather a faulty, after-the-fact analysis cobbled together from inconsistent data sources and swiftly (and publicly) recognized as inaccurate by the market. (*See* Mallinckrodt Mem. § I.C.) And, the Citron analysis was inconsistent with the information conveyed shortly thereafter by Mr. Lannum and Mr. O'Neill, which, as discussed above, Plaintiff does not allege to be false. Thus, obviously, the Citron analysis was not—and could not have been—known to Mr. Trudeau when he gave his estimate. *See Foley* v. *Transocean*, 861 F. Supp. 2d 197, 213-14 (S.D.N.Y. 2012) (dismissing complaint where plaintiffs' evidence was "almost entirely derived from sources released long after the challenged conference call statements"); *Ross* v. *Walton*, 668 F. Supp. 2d 32, 38–40 (D.D.C. 2009) (dismissing complaint that failed to show knowledge "at the time" of the alleged misstatements). Plaintiff has failed to plead any facts sufficient to show that Mr. Trudeau should

have known his estimate was misleading in October 2015, when he responded to the analyst's question at issue here.

For all of these reasons, and those in the Company's brief, Mr. Trudeau's October 6, 2015 estimate of Acthar's exposure to Medicare reimbursement is not actionable.

### 2. Mr. Trudeau's Opinion Statements Are Not Actionable

Two of the oral statements by Mr. Trudeau that Plaintiff alleges are actionable were expressed as opinions. As the Supreme Court held in *Omnicare*, a statement of opinion may be misleading only if the speaker does not *subjectively* hold the stated belief, or omits facts *necessary* to render his or her opinion not misleading. 135 S. Ct. at 1326–27. Neither of Mr. Trudeau's opinions is adequately alleged to be misleading under that standard.

Mr. Trudeau stated on October 6, 2015, "*we continue to believe* the path to market for a direct competitor to Acthar is uncertain and likely to be potentially long," and "the very nature of Acthar . . . makes it I *think* particularly difficult to develop a direct competitor." (Compl. ¶¶ 112–13.) This is, on its face, a statement of opinion. *See Omnicare*, 135 S. Ct. at 1326 (a CEO transforms a factual statement into one of opinion with the use of the phrases "I believe" and "I think"). Moreover, Plaintiff has not alleged with particularity any facts to support the inference that Mr. Trudeau believed that the path to direct competition for Acthar was easy, certain, or imminent. To the contrary, Plaintiff acknowledges that Acthar was the "only therapeutic ACTH drug licensed by the FDA for use in the United States" and that the "U.S. licensing of Synacthen" (or any competitor drug) "was dependent upon prior completion of adequate testing to prove, to the FDA's satisfaction, both the safety and efficacy for each disease for which it would be used." (*See* Compl. ¶¶ 5, 14.) And it was not until fifteen months after Mr. Trudeau expressed the opinion quoted above that the FTC entered into a consent decree in which Mallinckrodt agreed to license Synacthen to a competitor. (*See id.* ¶ 207.)

Similarly, Mr. Trudeau's August 4, 2015 statement regarding progress with payer formularies was also expressed as an opinion: "We're having, I *think*, very productive dialogue with payers . . . ." (*Id.* ¶ 171 (emphasis added).)  Again, Plaintiff does not allege that Mr. Trudeau did not actually believe that the Company was having a "productive" dialogue with payers—even assuming that vague statement of corporate optimism was not nonactionable puffery.  (*See* Mallinckrodt Mem. § I.D).  Indeed, Plaintiff does not actually dispute that progress was made with some insurers; Plaintiff merely alleges that "many," but not all, private insurers "were continuing to approve Acthar only for a limited range of treatments."  (Compl. ¶¶ 163, 167.)

Further, opinions are not misleading merely because the plaintiff alleges the speaker knows, but does not "disclose, some fact cutting the other way."  *Omnicare*, 135 S. Ct. at 1329; *Tongue* v. *Sanofi*, 816 F.3d 199, 210 (2d Cir. 2016).  This is especially the case here given that, as detailed in the Company's brief, the relevant information about Acthar's competitive position in the marketplace and payer formularies was well known to investors at the time of Mr. Trudeau's statements, because it appeared in the Company's disclosures and other public sources.  (*See* Mallinckrodt Mem. §§ I.A.1, I.D.)

**B.      The Complaint Fails to State a Claim Under Section 10(b) and Rule 10b-5 Against Mr. Harbaugh**

As set forth above, Mr. Harbaugh is not liable under the securities laws for any of the written company statements he signed, and which Plaintiff alleges were materially false or misleading, for the reasons stated in the Company's brief.  In addition, the Complaint refers to two oral statements by Mr. Harbaugh, but does not allege they are false, or offer *any reason at all* why they might be misleading.  Thus, neither statement is actionable.  *See Tellabs*, 551 U.S. at 321.  According to the Complaint:

- On an earnings call held on May 8, 2017, Mr. Harbaugh stated "that the Company's rebating strategy 'was fully considered in the guidance that we provided.'" (Compl. ¶ 158.) Plaintiff does not allege, however, that the Company's rebating strategy was not accurately represented by Mr. Harbaugh, nor does it make any allegations to support any notion that this statement was misleading.

- On a May 8, 2018 earnings call, Mr. Harbaugh stated "that the Company's Acthar sales in the first quarter 2018 'were down 10% driven by lower volumes.'" (*Id.* ¶ 78.) Again, Plaintiff does not allege that this remark was false. Just the opposite—Plaintiff affirmatively relies on this statement as an alleged "admission" of truth. (*Id.*) There can be no claim that this statement is an actionable misrepresentation when Plaintiff relies on it as true. *See Scritchfield* v. *Paolo*, 274 F. Supp. 2d 166, 181 (D.R.I. 2003) (holding on a motion to dismiss that a statement was "not actionable because it [was] true," observing that the "plaintiffs have explicitly stated as much in the Complaint").

In addition, Plaintiff alleges no subsequent stock price decline associated with either statement and thus has failed to plead loss causation. *Dura*, 544 U.S. at 347 (a plaintiff fails to plead loss causation where it "fail[s] to claim that [the defendant's] share price fell significantly after the truth became known"). In fact, Mr. Harbaugh's May 8, 2018 statement postdates the end of the proposed class period and therefore is not actionable on that basis alone. *See In re Int'l Bus. Machines Corporate Sec. Litig.*, 163 F.3d 102, 107 (2d Cir. 1998) (refusing to consider an alleged misstatement outside the class period because a defendant "is liable only for those statements made during the class period").

**C.     The Complaint Fails to State a Claim Under Section 10(b) and Rule 10b-5 Against Mr. O'Neill**

   1.   Plaintiff Fails to Plead That Either of the Two Oral Statements by Mr. O'Neill Are Actionable

Plaintiff does not allege Mr. O'Neill signed any of the Company's written statements that are alleged to have been false or misleading. Plaintiff alleges only that Mr. O'Neill made two oral statements, but, again, fails to allege any reason why either might be false or misleading. And with respect to both, Plaintiff again affirmatively relies on those

statements as true.  Like Mr. Harbaugh's oral statements, Mr. O'Neill's statements are therefore

not actionable.

- The Complaint alleges that on a September 8, 2014 investor call, Mr. O'Neill "stated that the Company had conducted 'across the board' due diligence" in connection with its proposed merger with Questcor.  (Compl. ¶¶ 104, 216.) Plaintiff never alleges that this remark was false or misleading, but rather affirmatively relies on the truth of this statement to argue that "it is inconceivable that Defendants did not know that the FTC had already started an investigation." (*Id.* ¶ 104.)

- *Second*, Plaintiff alleges that Mr. O'Neill stated at a healthcare conference on November 30, 2016: "Our portfolio has shifted a little bit into the mid-40s as it relates to Medicare reimbursement for the product versus where it was a year and a half, two years ago which was more in that low, mid-30s." (*Id.* ¶ 151.)  Plaintiff does not allege that this statement was false, and again, actually contends that it was a true "admi[ssion]" that allegedly contradicted Mr. Trudeau's statement on the same subject a year earlier. (*Id.*)

Moreover, with respect to Mr. O'Neill's November 30, 2016 statement

concerning Acthar's Medicare reimbursements, Plaintiff cannot properly ground alleged liability

in a theory that the statement contained an actionable omission because it "did not answer" or

otherwise mention an alleged discrepancy between the Company's numbers and the inaccurate

and discredited Citron Report.  (*Id.*)  Mr. O'Neill was under no obligation to affirmatively

address the Citron Report.  To begin with, the question to which Mr. O'Neill responded in

speaking about Acthar's reimbursements by Medicare did not ask about the Citron Report (or for

that matter Mr. Trudeau's earlier statement in October 2015)—it was about the changing mix of

patients for Acthar.[2]  *See In re Anadigics, Inc., Sec. Litig.*, No. Civ. A. 08–5572 (MLC), 2011

---

[2]  The analyst's question to which Mr. O'Neill responded asked:

> So actually let's just start with Acthar and the mix of Acthar has changed quite dramatically over the last couple of years and where you are seeing a lot more of the mix shifting towards rheumatology and pulmonology.  So talk about where things stand in terms of sales mix and, within pulmonology and rheumatology, where you are seeing the greatest amount of growth, what specific clinical settings.

WL 4594845, at *23 (D.N.J. Sept. 30, 2011), *aff'd*, 484 F. App'x 742 (3d Cir. 2012) (company

executives had no obligation to discuss a matter outside of the scope of the question asked).  In

addition, the law requires only that a defendant "provide complete and non-misleading

information with respect to the subjects *on which he undertakes to speak*."  *In re K-tel Int'l, Inc.*

*Sec. Litig.*, 300 F.3d 881, 898 (8th Cir. 2002) (emphasis in original) (quoting *Helwig* v. *Vencor,*

*Inc.*, 251 F.3d 540, 561 (6th Cir. 2001)); *cf. In re Eaton Corp. Sec. Litig.*, No. 16-CV-5894

(JGK), 2017 WL 4217146, at *9 (S.D.N.Y. Sept. 20, 2017) ("A company has no duty to correct

or verify rumors in the marketplace unless those rumors can be attributed to the company.")

(quoting *State Teachers Ret. Bd.* v. *Fluor Corp.*, 654 F.2d 843, 850 (2d Cir. 1981)).[3]

       Finally, not only are Mr. O'Neill's oral statements not alleged to be false, but any

claim related to them also fails because Plaintiff has not pleaded loss causation.  No subsequent

stock declines associated with either of those statements are alleged in the Complaint.

---

       And in some of these legacy areas that we used to hear a lot about, particularly
       (technical difficulty) on the assets like nephrotic syndrome, infantile spasms, MS.
       Sort of begs the question are they actually flat, are they growing, are they declining?
       Help us understand all those dynamics.

Decl. Charles E. Davidow Supp. Individual Defs.' Mot. Dismiss, July 17, 2018, Ex. A
(Nov. 30, 2016 Piper Jaffray Healthcare Conference Tr.), at 2–3.

[3]    In any event, there can be no argument that Mr. O'Neill's supposed failure to "answer" the
alleged discrepancy between the faulty Citron analysis or Mr. Trudeau's prior statement was
material, when all of that information was already publicly available, and Mr. O'Neill's
statement was made two weeks *after*, according to Plaintiff's allegations, "the full extent of
the Company's reliance on Medicare and Medicaid reimbursements for Acthar came to light"
on November 16, 2016.  (Compl. ¶¶ 137, 182.)  *See Wang* v. *Bear Stearns Co.*, 14 F. Supp.
3d 537, 545 (S.D.N.Y. 2014) (Where a plaintiff has "acknowledged that the substance of [the
defendant's] alleged omission . . . had already been disclosed to the market," any "failure on
[the defendant's] part to reference the [allegedly omitted information] in a later conversation
. . . after the release cannot be material as a matter of law.").

Under *Janus Capital Group, Inc.* v. *First Derivative Traders*, liability under Rule 10b-5(b) attaches only to the "maker of a statement," with "ultimate authority over the statement, including its content and whether and how to communicate it." 564 U.S. 135, 142 (2011). Plaintiff does not allege that Mr. O'Neill signed or is quoted in any of the Company's written statements (such as statements in documents such as press releases and Form 10-Ks) that are alleged to be actionable. *Id.* at 147 n.11; *see also In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 165 (S.D.N.Y. 2012) ("[O]nly those officers whose signatures appear on misleading statements may be liable as the 'makers' of those statements."). He therefore is not a proper defendant with respect to any of those statements.

Nor is it sufficient under *Janus* to allege that a person "prepares" or is "significantly involved in preparing" a statement, or otherwise "contribute[s] 'substantial assistance' to the making of a statement but do[es] not actually make it." 564 U.S. at 142–43, 147–48. Here, Plaintiff merely alleges in a conclusory fashion that Mr. O'Neill "participated on many quarterly and other investor conferences" and that he "participated in the creation, development and reporting of the Company's operational and financial projections and/or reports." (Compl. ¶¶ 53, 216, 230.) Such vague and conclusory allegations do not pass muster under *Janus*. All claims against Mr. O'Neill under Section 10(b) and Rule 10b-5 must therefore be dismissed.

### D. The Complaint Fails to Plead Scienter on the Part of the Individual Defendants, or Loss Causation

In addition to failing to plead a false or misleading statement or omission by any of the Individual Defendants, and as explained in greater detail in the Company's brief, the Complaint is entirely devoid of any specific facts of the kind courts require to plead a strong

inference of scienter under the heightened standard of the PSLRA.  (*See* Mallinckrodt Mem. § II.)  Notably, there are no particularized allegations of any specific facts learned by the Individual Defendants that are contrary to their public statements, or when or how they learned those facts.  *See, e.g.*, *Plumbers Local No. 200 Pension Fund* v. *Wash. Post Co.*, 831 F. Supp. 2d 291, 299 (D.D.C. 2011) (holding plaintiff failed to plead a strong inference of scienter "absent sufficient allegations" to show "what [the defendant] learned, from whom he learned it, and how he responded to it"); *Stevens* v. *InPhonic, Inc.*, 662 F. Supp. 2d 105, 121 (D.D.C. 2009) ("[T]he plaintiffs' generalized assertion that the defendants' corporate positions exposed them to 'confidential' information about [the company] is insufficient to warrant an inference of scienter in the absence of details regarding what this information entailed, when the defendants received it, or how it related to the alleged fraud.").

Instead, the Complaint impermissibly relies on conclusory allegations premised on the wholly speculative inference that the Individual Defendants must have known contrary facts by virtue of their senior positions at the Company or roles on various committees.  (*See* Mallinckrodt Mem. § II.B.)  As explained in the Company's brief, courts routinely reject attempts to plead scienter in this manner.  *See, e.g.*, *Ross*, 668 F. Supp. 2d at 40 ("[A] vague assertion that a defendant must have known about the fraud by virtue [of] a position of authority does not result in a strong inference of scienter."); *In re Fannie Mae Sec., Derivative, & "ERISA" Litig.*, 503 F. Supp. 2d 25, 40 (D.D.C. 2007) ("[S]cienter cannot be inferred solely because a defendant is a corporate officer.").

In addition, the Complaint makes no attempt to establish motive based on suspicious stock sales by the Individual Defendants—nor could it.  Each of the Individual Defendants significantly increased his holdings of Mallinckrodt stock over the proposed class

period, during the time at which Plaintiff alleges prices were allegedly inflated by virtue of various alleged misstatements and omissions by the Defendants.  (*See* Mallinckrodt Mem. § II.A.)

Plaintiff also fails to allege loss causation for several alleged misstatements and omissions identified in the Complaint, as explained above with respect to certain oral statements by Mr. Harbaugh and Mr. O'Neill, (*see supra* pp. 10, 12), and in the Company's brief with respect to other alleged misstatements or omissions by Mr. Trudeau and the Company (*see* Mallinckrodt Mem. § III).  As detailed in the Company's brief, Plaintiff littered the Complaint with a hodgepodge of alleged misstatements and omissions in the apparent hopes that something will stick, but has claimed no stock price decline, and hence, no loss, associated with several of them.  (*See id.*)

Each of these pleading failures provides an independent basis on which Plaintiff's claims under Section 10(b) and Rule 10b-5 should be dismissed.

## III.    THE COMPLAINT FAILS TO STATE A CLAIM AGAINST THE INDIVIDUAL DEFENDANTS FOR SECONDARY LIABILITY UNDER SECTION 20(A)

Plaintiff has alleged Section 20(a) "control person" liability claims against each of the Individual Defendants.  To plead a Section 20(a) claim, a plaintiff must show, at a minimum, both (1) "a primary violation by the controlled person," and (2) "control of the primary violator by the targeted defendant."  *In re Harman Int'l Indus., Inc. Sec. Litig.*, 791 F.3d 90, 111 (D.C. Cir. 2015) (quoting *S.E.C.* v. *First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996)).

Plaintiff's Section 20(a) claims as to each Individual Defendant fail because, as discussed above and in the Company's brief, Plaintiff has failed to plead an underlying primary violation of Section 10(b) or Rule 10b-5.  *See id.* ("A claim under Section 20(a) can exist only if

there is a viable claim against the corporation."); *IDT Corp.* v. *eGlobe Inc.*, 140 F. Supp. 2d 30, 36 (D.D.C. 2001) ("[B]ecause the court has dismissed the cause of action alleging a violation of Section 10(b), [plaintiff] cannot proceed on its derivative claim under Section 20(a)."). Absent a primary violation, no control person liability exists.

Even if Plaintiff had alleged a primary violation, the conclusory allegations in the Complaint would nonetheless fail adequately to plead a Section 20(a) claim. The gravamen of Plaintiff's argument is that because the Individual Defendants were officers of the Company, they had control over every alleged misstatement or omission. Specifically, the Complaint alleges that each Individual Defendant "had direct involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities law violations." (Compl. ¶¶ 237–38.) However, "status as an officer, director or shareholder, absent more, is not enough to trigger liability under § 20." *Krasner* v. *Rahfco Funds LP*, No. 11 CV 4092 VB, 2012 WL 4069294, at *6–7 (S.D.N.Y. Aug. 9, 2012) (quoting *Hemming* v. *Alfin Fragrances, Inc.*, 690 F. Supp. 239, 245 (S.D.N.Y. 1988)). Here, Plaintiff alleges nothing "more"—for example, the Complaint provides no basis to infer that Mr. O'Neill (Executive Vice President and President, Autoimmune and Rare Disease) or Mr. Harbaugh (CFO), respectively, could have controlled the specific oral statements made on various conference calls by Mr. Trudeau, as CEO. *See, e.g.*, *Washtenaw Cty. Emps.' Ret. Sys.* v. *Walgreen Co.*, No. 15-cv-3187, 2016 WL 5720375, at *15 (N.D. Ill. Sept. 30, 2016) (finding that CFO could not be held liable under section 20(a) for the statements of the CEO to whom he reported).

In addition, courts in this circuit and other circuits have required that a plaintiff also plead that the individual defendant culpably participated in the alleged fraud in order to state

a viable claim under Section 20(a).[4]  As one court explained, "if a Section 20(a) claim could be brought without some evidence of malfeasance on the part of a defendant, any director of any public corporation could be held liable as a 'control person' . . . by virtue of his position," which, "of course, would make a mockery of Congress's intent in passing the PSLRA."  *In re Fannie Mae*, 503 F. Supp. 2d at 44.  The "culpable participation" requirement is supported by the need for some level of scienter, as the Supreme Court suggested when it "explicitly cited Section 20(a)" when explaining that "*each* of the provisions of the 1934 Act that expressly create a civil liability . . . contains a state-of-mind condition requiring something more than negligence."  *Id.* (emphasis in original) (quoting *Ernst & Ernst* v. *Hochfelder*, 425 U.S. 185, 209 n.28 (1976)).  Plaintiff nowhere grounds liability in an adequate pleading of scienter in the Complaint, where the allegations of scienter for the primary violators are woefully deficient and based on nothing more than allegations that the Individual Defendants were officers and executives at the Company.  (*See* Mallinckrodt Mem. § II.)  Such conclusory allegations suffice neither for purposes of Section 10(b) nor Section 20(a) of the Exchange Act.

Plaintiff's failure to present a well-pleaded allegation of control and culpable participation is particularly glaring with respect to Mr. O'Neill, who is not alleged to have signed any of the Company's SEC filings.  The sum total of Plaintiff's allegations of control and culpable participation as to Mr. O'Neill is that he had a management role in the Specialty Brands

---

4   In *In re Harman*, the D.C. Circuit recognized but declined to resolve the "split in the circuits on whether the plaintiff must show that the alleged control person 'culpably participated' in the underlying fraud" or whether "the plaintiff need only show the defendant is a 'controlling person.'"  791 F.3d at 111–12.  However, district courts in this district have found the culpable participation requirement to be the more appropriate standard.  *See Freeland* v. *Iridium World Commc'ns, Ltd.*, 545 F. Supp. 2d 59, 81–82 (D.D.C. 2008) ("As to the Section 20(a) claim, Plaintiff must allege that [the defendant] was in some meaningful sense a culpable participant in the primary violation."); *In re Fannie Mae*, 503 F. Supp. 2d at 43–44 (same).

segment of the Company (which includes Acthar), served as one member among many on Mallinckrodt's executive committee, and took part in three investor calls. (Compl. ¶¶ 52–53, 104, 146, 151, 216.) None of this shows Mr. O'Neill possessed "the power to direct or cause the direction of the management and policies of" the Company, as the SEC's regulations define "control." 17 C.F.R. § 230.405. Nor, as explained above in Section II.C.2, is Mr. O'Neill adequately alleged to have made (or even participated in making) any alleged misstatement, and is thus not a culpable participant in the fraud alleged. *See In re Fannie Mae*, 503 F. Supp. 2d at 45–46 (holding allegations that directors were merely "asleep at the switch," without pleading they actively participated by "play[ing] a culpable role in [the allegedly fraudulent] decisions or their execution," are insufficient). Plaintiff's Section 20(a) claims should be dismissed.

## CONCLUSION

For the foregoing reasons and the reasons set forth in the Company's memorandum of law, the Individual Defendants respectfully submit that their motion to dismiss should be granted, and the claims against the Individual Defendants in the Consolidated Class Action Complaint should be dismissed with prejudice.

Dated: July 17, 2018

Respectfully submitted,

PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
By: /s/ *Charles E. Davidow*
    Charles E. Davidow

Charles E. Davidow (D.C. Bar No. 331702)
2001 K Street, NW
Washington, D.C. 20006
Phone: (202) 223-7300
Fax: (202) 223-7420
cdavidow@paulweiss.com

Daniel J. Kramer (*pro hac vice*)
David W. Brown (*pro hac vice*)
William A. Clareman (*pro hac vice*)
1285 Avenue of the Americas
New York, NY 10019
Phone: (212) 373-3000
Fax: (212) 757-3990
dkramer@paulweiss.com
dbrown@paulweiss.com
wclareman@paulweiss.com

*Attorneys for Mark Trudeau, Matthew K.
Harbaugh, and Hugh O'Neill*